IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION


BARBARA E. HAMILTON,              *
                                  *
     Plaintiff,                   *
                                  *
vs.                               * CIVIL ACTION NO. 16-000289-B
                                  *
NANCY BERRYHILL,[1]               *
Acting Commissioner of Social     *
Security,                         *
                                  *
     Defendant.                   *


## ORDER

Plaintiff Barbara E. Hamilton (hereinafter "Plaintiff"),
seeks judicial review of a final decision of the Commissioner of
Social Security denying her claim for supplemental security
income under Title XVI of the Social Security Act, 42 U.S.C. §§
1381, *et seq.* On May 2, 2017, the parties consented to have the
undersigned conduct any and all proceedings in this case.  (Doc.
21).  Thus, the action was referred to the undersigned to
conduct all proceedings and order the entry of judgment in
accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil

---

[1] Nancy Berryhill became the Acting Commissioner of Social
Security on January 23, 2017.  Pursuant to Rule 25(d), Federal
Rules of Civil Procedure, Nancy Berryhill should be substituted
for Carolyn W. Colvin as the defendant in this suit.  No further
action need be taken to continue this suit by reason of the last
sentence of section 205(g) of the Social Security Act, 42 U.S.C.
§ 405(g).

Procedure 73. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

## I. <u>Procedural History</u>

Plaintiff protectively filed her application for benefits on December 28, 2012, alleging disability beginning December 28, 2012,[2] based on problems with her feet, back, and legs, high blood pressure, depression, and anxiety. (Doc. 14-1 at 2, 6).[3] Plaintiff's application was denied and upon timely request, she was granted an administrative hearing before Administrative Law Judge Jerome L. Munford (hereinafter "ALJ") on July 7, 2014. (Doc. 13 at 211). Plaintiff attended the hearing with her counsel and provided testimony related to her claims. (Doc. 13 at 217). A vocational expert ("VE") also appeared at the hearing and provided testimony. (Doc. 13 at 248). On October 16, 2014, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Doc. 13 at 195). The Appeals Council denied Plaintiff's request for review on April 21, 2016. (Doc. 13 at 9). Therefore, the ALJ's decision dated October 16,

---

[2] Plaintiff amended her onset date from September 24, 2009, to December 28, 2012. (Doc. 14-1 at 2; Doc. 13 at 216).

[3] The Court's citations to the transcript in this order refer to the pagination assigned in CM/ECF, not the page numbers assigned by the Agency. Because the transcript is divided into separate documents, the Court's citations include the appropriate CM/ECF document number.

2014, became the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). Oral argument was conducted on May 31, 2017 (Doc. 25), and the parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. <u>Issues on Appeal</u>

> 1. **Whether the ALJ erred in failing to find Plaintiff's depression and headaches to be severe impairments?**
>
> 2. **Whether the ALJ's RFC for a range of light work is supported by substantial evidence?**

## III. <u>Factual Background</u>

Plaintiff was born on October 13, 1962, and was fifty-one years of age at the time of her administrative hearing on July 7, 2014. (Doc. 14-1 at 2; Doc. 13 at 211, 217-18). Plaintiff graduated from high school taking regular classes. (Doc. 13 at 218; Doc. 14-1 at 7).

Plaintiff worked from 2007 to 2009 as an in-home child care provider. (Doc. 14-1 at 7; Doc. 13 at 218). In 2003, she worked as an equipment operator and a flagger for a construction company, and from 1984 to 1999, she worked as a grader at a catfish plant. (Doc. 14-1 at 7; Doc. 13 at 219-20). At the administrative hearing, Plaintiff testified that she cannot work

due to pain in her legs, knee, back, shoulder, and neck. (Doc. 13 at 221).

IV. **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[4] Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the

---

[4] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

Commissioner's decision. Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

## V. Statutory And Regulatory Framework

An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability. 20 C.F.R. §§ 404.1520, 416.920.

The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail

5

at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work.  <u>Jones v. Bowen</u>, 810 F.2d 1001, 1005 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history.  <u>Id.</u>  Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history.  <u>Sryock v. Heckler</u>, 764 F.2d 834, 836 (11th Cir. 1985).  If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled.  <u>Jones v. Apfel</u>, 190 F.3d 1224, 1228 (11th Cir. 1999).  <u>See also</u> <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing <u>Francis v. Heckler</u>, 749 F.2d 1562, 1564 (11th Cir. 1985)).

**VI.  Discussion**

> **A. The ALJ did not err in failing to find that Plaintiff's depression and headaches are severe impairments.**

In this case, Plaintiff argues that the ALJ erred in

failing to find that her depression and headaches are severe impairments. (Doc. 17 at 2, 4-6). Specifically, with respect to her depression, Plaintiff argues that the ALJ acknowledged that she had been diagnosed with depression, but improperly found that her condition was no more than a slight abnormality that would not be expected to produce more than minimal limitations. (Id.). With respect to her headaches, Plaintiff argues that the ALJ did not even discuss this impairment and erred in failing to find it severe given the multiple diagnoses of headaches and migraines in her medical records. (Id.).

The Commissioner counters that the ALJ expressly considered Plaintiff's depression, and his finding that Plaintiff's depression was non-severe is supported by substantial evidence. (Doc. 18 at 7). The Commissioner further argues that, while the ALJ did not discuss Plaintiff's headaches, Plaintiff never mentioned this impairment as a basis for her disability claim, and, further, that there is no evidence that she ever suffered disabling symptoms from this impairment. (Doc. 18 at 8-9). Having carefully reviewed the record in this case, the Court finds that Plaintiff's claim is without merit.

Turning, first, to Plaintiff's argument related to her depression, the record shows that the ALJ found at step two of the sequential evaluation process that Plaintiff had the severe impairments of degenerative disc disease of the cervical and

lumbar spine, osteoarthritis of the left knee, and obesity. (Doc. 13 at 197). The ALJ further discussed the evidence relating to Plaintiff's depression and determined that it was not a severe impairment. (Doc. 13 at 198).

At the outset, the Court notes that, even if Plaintiff's depression is severe, the ALJ's failure to classify it as a severe impairment at step two of the sequential evaluation process is not fatal. See Bennett v. Astrue, 2013 U.S. Dist. LEXIS 115951, *14, 2013 WL 4433764, *5 (N.D. Ala. 2013) ("'[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe' and, even if the ALJ erred by not recognizing every severe impairment, the error was harmless since he found at least one such impairment."); Ferguson v. Astrue, 2012 U.S. Dist. LEXIS 139135, *25, 2012 WL 4738857, *9 (N.D. Ala. 2012) ("[B]ecause step two only acts as a filter to prevent non-severe impairments from disability consideration, the ALJ's finding of other severe impairments allowed him to continue to subsequent steps of the determination process and his failure to list headaches as severe does not constitute reversible error because, under the Social Security regulations, the ALJ at later steps considers the combined effect of all the claimant's impairments.") (emphasis in original). As stated, the ALJ found Plaintiff's degenerative disc disease of the cervical and lumbar spine,

osteoarthritis of the left knee, and obesity to be severe at step two and then proceeded on to the next steps where he considered all of her impairments in combination, including her depression. (Doc. 13 at 197, 202-04). Thus, even if severe, the ALJ's failure to find Plaintiff's depression severe at step two is harmless.

Furthermore, in order for an impairment to be severe, it must be more than a slight abnormality or a combination of slight abnormalities "that causes no more than *minimal* functional limitations." 20 C.F.R. § 416.924(c) (emphasis added). Indeed, it must "*significantly* limit[]" an individual's "ability to do *basic work activities*." 20 C.F.R. § 416.920(c) (emphasis added). "It is [the] Plaintiff's burden to prove the existence of a severe impairment, and she must do that by showing an impact on her ability to work." Marra v. Colvin, 2013 U.S. Dist. LEXIS 105669, *13-14, 2013 WL 3901655, *5 (M.D. Fla. 2013) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)); see also Barnhart v. Thomas, 540 U.S. 20, 24 (2003) ("At step two, the SSA will find nondisability unless the claimant shows that he has a 'severe impairment,' defined as 'any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities.'") (quoting §§

404.1520(c), 416.920(c)); McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986) ("Unless the claimant can prove, as early as step two, that she is suffering from a severe impairment, she will be denied disability benefits.").

"In order to evaluate the severity of a mental impairment, the Commissioner's regulations require the application of a 'special technique' or so-called 'paragraph B' criteria." Willis v. Commissioner of Soc. Sec., 2016 U.S. Dist. LEXIS 91497, *10, 2016 WL 3752182, *3 (M.D. Fla. July 14, 2016) (citing 20 C.F.R. § 404.1520a)). "Under the special technique, the ALJ will rate the degree of functional limitation in four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." Id. (citing 20 C.F.R. § 404.1520a(c)(3)). The degree of limitation in the first three areas are rated on a five-point scale of none, mild, moderate, marked, and extreme, and the fourth area is rated as none, one or two, three, four or more. See id. (citing 20 C.F.R § 404.1520a(c)(4)). If the degree of limitation in the first three functional areas is none or mild, and the fourth area is none, the ALJ generally will conclude, as he did here, that the impairment is not severe, unless the evidence otherwise indicates more than a minimal limitation in ability to do basic work activities. See id. (citing 20 C.F.R. § 404.1520a(d)(1)). The ALJ's decision must

incorporate findings and conclusions based on the special technique. See id. (citing 20 C.F.R. § 404.1520a(e)(4)).

In this case, the record shows that the ALJ followed the special technique for assessing the severity of a mental impairment set forth in 20 CFR §§ 404.1520a, 416.920a and considered the four broad functional areas of the paragraph B criteria (*i.e.*, Plaintiff's activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation). (Doc. 13 at 198). In doing so, the ALJ examined both the medical evidence and the opinion evidence related to Plaintiff's depression.

Specifically, the record shows that the ALJ considered the March 20, 2013, report of consultative psychologist, Dr. Kathy Ronan, Ph.D., who evaluated Plaintiff and reported that Plaintiff appeared intoxicated at her appointment. The report states: "Ms. Hamilton seemed to be on something, slurred, and could not even repeat something I just discussed with her." (Doc. 15 at 57). Dr. Ronan further observed that Plaintiff "presented as groggy, and in pain. She grunted, walked slowly, rolled on the couch, and moaned." (Doc. 15 at 60). Dr. Ronan stated that, "[s]ome of this may have been exaggerated, but this was difficult to tell in that she also appeared impaired and either high or overmedicated. She drooled at one point." (Doc. 15 at 60). Dr. Ronan noted her concern that Plaintiff was "drug

seeking" "as she has been to numerous places with various complaints and has received benzos and opioids, and she reports a history of addiction." (Doc. 15 at 60).

While at the evaluation, Plaintiff reported to Dr. Ronan that she had applied for disability because of her back, legs, and depression, that she was taking medication for her depression, and that it was helping. (Doc. 15 at 57-58). Plaintiff reported a history of substance abuse, including alcohol, marijuana, cocaine, and pills, and substance abuse treatment. (Doc. 15 at 59; Doc. 13 at 231). Plaintiff also reported living on her own, shopping, cooking, and cleaning. (Doc. 15 at 61; Doc. 13 at 230).

Dr. Ronan's examination findings revealed slurred speech, grogginess, flat mood and affect, eyes repeatedly drifting shut, impaired attention and concentration, dosing during the evaluation, impaired memory, impaired thought processes, and impaired fund of information, intoxication or overmedication, below normal abstraction, and impaired judgment and insight. (Doc. 15 at 60-61). Dr. Ronan noted that Plaintiff was "difficult to assess given that she was either intoxicated or overly medicated during the evaluation." (Doc. 15 at 61). Dr. Ronan opined that "[w]hile she seems to have some depression and anxiety usually caused by situational factors, I cannot rule out the impact substance addiction and possible active use has had

or may have on her emotional or psychiatric state. She has notably been to numerous medical professionals over time with complaints of depression/anxiety for which she has gotten Xanax several times, and pain for which she has gained opioids, and I am concerned of current addiction." (Doc. 15 at 61). Dr. Ronan opined that Plaintiff's overuse of prescribed medications would impact any real depression that she may have and would make it difficult to assess her complaints of pain as she may be complaining of pain to get substances. (Doc. 15 at 61). Dr. Ronan diagnosed: rule out major depression, recurrent, with psychotic features, rule out opioid or benzodiazepine or other substance dependence, rule out pain disorder, rule out malingering, rule out learning or cognitive disorder, and rule out personality disorder. (Doc. 15 at 62). Her prognosis for Plaintiff's depression was fair to good for improvement in twelve months with proper treatment, if she truly has depression, and poor for resolution in twelve months if she has substance addiction, as treatment has not been successful in the past. (Doc. 15 at 62). Dr. Ronan recommended a medical review of all of Plaintiff's medications, noting that they impact her mental status and that she may be drug seeking. (Doc. 15 at 62). Dr. Ronan further recommended that Plaintiff receive drug screening and individual therapy, as well as referral to a pain management program which emphasizes non-pharmacological

interventions. (Doc. 15 at 62). Dr. Ronan concluded that Plaintiff's examination findings were invalidated by exaggeration of symptoms and intoxication. (Doc. 15 at 63). She opined that Plaintiff would have the ability to carry out simple and complex instructions if not intoxicated. (Doc. 15 at 63). This evidence is consistent with the ALJ's finding that Plaintiff's depression is non-severe.

Also consistent with the ALJ's finding is Plaintiff's testimony at the administrative hearing that her depression is better and is no longer an issue. (Doc. 13 at 234). In addition, the findings of State Agency psychological consultant, Dr. Steven Dobbs, Ph.D., support the ALJ's finding. Dr. Dobbs reviewed Plaintiff's records, including her 2010-2011 records from West Alabama Mental Health Center and Dr. Ronan's examination, and found that her mental impairments are not severe and cause no more than mild difficulties. (Doc. 13-1 at 12).

The Court has also reviewed Plaintiff's medical records from West Alabama Mental Health Center showing diagnoses in 2010 and 2011 of major depression with psychotic features. (Doc. 14-2 at 3-13). However, Plaintiff's treatment records also reflect conservative treatment with medication only and Plaintiff's non-compliance with that treatment. (Doc. 14-2 at 3-13). The foregoing substantial evidence supports the ALJ's finding that

Plaintiff's depression is non-severe.

Turning now to Plaintiff's argument related to her headaches/migraines, while it is true that the ALJ did not discuss this impairment in his decision, the record reveals that Plaintiff did not allege headaches as a ground for disability either in her application or during her hearing before the ALJ. (Doc. 14-1 at 6; Doc. 13 at 221). "[A]n ALJ need not consider impairments when the claimant fails to put the ALJ on notice of their existence and . . . an ALJ is under no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability." Jones v. Astrue, 863 F. Supp. 2d 1142, 1153 (S.D. Ala. 2012) (citing Street v. Barnhart, 133 Fed. Appx. 621, 627–28 (11th Cir. 2005)).

Furthermore, even now, Plaintiff alleges no facts and points to no evidence in the record to support her claim that her headaches impinge on her ability to work. While Plaintiff's treatment notes reflect diagnoses and treatment of migraines with medication, they do not indicate that she suffers any limitations due to headaches or migraines in excess of the RFC. (Doc. 14-2 at 4-13; Doc. 15 at 40-41). Indeed, Plaintiff has pointed to no medical source identifying any functional limitations resulting from her headaches or migraines. "It is well settled that a plaintiff bears the ultimate burden of

establishing disability." <u>Jones</u>, 863 F. Supp. 2d at 1152
(citing <u>Russell v. Astrue</u>, 331 Fed. Appx. 678, 679 (11th Cir.
2009); <u>Carnes v. Sullivan</u>, 936 F.2d 1215, 1218 (11th Cir. 1991);
<u>Brady v. Heckler</u>, 724 F.2d 914, 918 (11th Cir. 1984)). "In
addition, the plaintiff must provide corroborative medical or
other evidence of his impairments in the record." (<u>Id.</u>)
(citations omitted). This, Plaintiff has failed to do.

In sum, Plaintiff has failed to satisfy her burden of proof
with respect to the alleged severity of either her depression or
her headaches. Although Plaintiff has produced medical records
documenting her diagnoses and treatment for these conditions,
none of the records indicates that any of these impairments is
severe and significantly limits her ability to do basic work
activities. Thus, Plaintiff's claim must fail.

### B. The ALJ's RFC for a range of light work is supported by substantial evidence.

Last, Plaintiff argues that the ALJ's RFC for a range of
light work is not supported by substantial evidence. (Doc. 17
at 4). Specifically, Plaintiff argues that the RFC "does not
account for [her] mental impairments or severe pain." (Doc. 17
at 7). Having reviewed the record at length, the Court
disagrees.

Residual functional capacity is a measure of what Plaintiff
can do despite his or her credible limitations. <u>See</u> 20 C.F.R. §

404.1545.   Determinations of a claimant's residual functional capacity are reserved for the ALJ, and the assessment is to be based upon all the relevant evidence of a claimant's remaining ability to work despite his or her impairments, and must be supported by substantial evidence.  See Beech v. Apfel, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546 and Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)); Saunders v. Astrue, 2012 U.S. Dist. LEXIS 39571, *10, 2012 WL 997222, *4 (M.D. Ala. March 23, 2012).  Once the ALJ has determined the plaintiff's residual functional capacity, the claimant bears the burden of demonstrating that the ALJ's decision is not supported by substantial evidence.  See Flynn v. Heckler, 768 F.2d 1273, 1274 (11th Cir. 1985).  Plaintiff has failed to meet her burden in this case.

In his decision, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a range of light work which allows for the following limitations: "occasional stooping and crouching; no upper right extremity overhead reaching or pushing or pulling; no climbing; no left leg pushing or pulling; and no unprotected heights."  (Doc. 13 at 200). Contrary to Plaintiff's argument, the record shows that the ALJ expressly considered both her mental impairment (depression) and her pain from her physical impairments in determining the RFC.

First, with respect to Plaintiff's depression and migraine

pain, the non-severity of those impairments has been established
and discussed in detail herein and will not be repeated here.
Based on the evidence detailed above, the Court finds that the
ALJ's RFC with respect to Plaintiff's non-severe impairments of
depression and migraine pain is supported by substantial
evidence, and Plaintiff has failed to show any limitations
caused by these impairments in excess of the RFC.[5]

Second, with respect to Plaintiff's claim that the RFC does
not account for her pain from her remaining physical
impairments, Plaintiff's claim likewise fails.  When evaluating
a claim based on disabling subjective symptoms, the ALJ
considers medical findings, a claimant's statements, statements
by the treating physician or other persons, and evidence of how
the subjective symptoms affect the claimant's daily activities
and ability to work.  20 C.F.R. § 416.929(a).  In a case where a
claimant attempts to establish disability through his or her own
testimony concerning pain or other subjective symptoms, a three-
part standard applies.  That standard requires: "(1) evidence of
an underlying medical condition and either (2) objective medical
evidence that confirms the severity of the alleged pain [or

---

[5] The Court further notes that, based on the testimony of the
vocational expert, the ALJ found that Plaintiff could perform
the jobs of "cashier" and "ticket taker," both of which are
unskilled.  (Doc. 13 at 205, 255).  The Court finds that these
unskilled jobs fully accommodate Plaintiff's non-exertional
impairments.

other subjective symptoms] arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain [or other subjective symptoms]." Hubbard v. Commissioner of Soc. Sec., 348 Fed. Appx. 551, 554 (11th Cir. 2009) (unpublished) (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). The Social Security regulations provide:

> [S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.

20 C.F.R. 404.1529(a) (2013). "A claimant's subjective testimony supported by medical evidence that satisfies the . . . standard is itself sufficient to support a finding of disability." Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995).

When evaluating a claim based on disabling subjective symptoms, the ALJ also must consider all of the claimant's statements about his or her symptoms and determine the extent to

which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  See 20 C.F.R. § 404.1528.  If an ALJ decides not to credit a claimant's testimony about his or her subjective symptoms, "the ALJ must articulate explicit and adequate reasons for doing so or the record must be obvious" as to the finding.  Strickland v. Commissioner of Soc. Sec., 516 Fed. Appx. 829, 832 (11th Cir. 2013) (unpublished) (citing Foote, 67 F.3d at 1562).  Failure to articulate the reasons for discrediting testimony related to pain or other subjective symptoms requires, as a matter of law, that the testimony be accepted as true.  Holt, 921 F.2d at 1223.

The Eleventh Circuit has held that the determination of whether objective medical impairments could reasonably be expected to produce subjective symptoms is a factual question to be made by the Secretary and, therefore, "subject only to limited review in the courts to ensure that the finding is supported by substantial evidence."  Hand v. Heckler, 761 F.2d 1545, 1549 (11th Cir. 1985), *vacated on other grounds and reinstated sub nom.*, Hand v. Bowen, 793 F.2d 275 (11th Cir. 1986).  A reviewing court will not disturb a clearly articulated finding related to a claimant's claims of disabling subjective symptoms, with substantial supporting evidence in the record. See Nye v. Commissioner of Social Sec., 524 Fed. Appx. 538, 543 (11th Cir. 2013) (unpublished).

"Regulation 96-7p and 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) require the ALJ to consider the consistency of subjective complaints." Lindsey v. Colvin, 2016 U.S. Dist. LEXIS 129547 *12-13, 2016 WL 5253219, *5 (N.D. Ala. Sept. 22, 2016) (quoting Majkut v. Commissioner of Soc. Sec., 394 Fed. Appx. 660, 663 (11th Cir. 2010)). However, SSR 16-3p is a new ruling which replaces SSR 96-7p and provides as follows: "[w]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation." SSR 16-3p, 2016 SSR LEXIS 42016, WL 1119029, *1. The effect of the new ruling has been described as follows:

> Both SSR 96-7p and SSR 16-13p direct that evaluation of a claimant's subjective symptoms shall consider all evidence in the record. Both Rulings also incorporate the regulations, 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), that identify factors to be considered in evaluating the intensity, persistence and functionally-limiting effects of the symptoms, including a claimant's daily activities; the nature, duration, frequency and intensity of her symptoms; precipitating and aggravating factors; and the type of medication and other treatment or measures used for the relief of pain and other symptoms, i.e., the familiar factors identified in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984). But while SSR 96-7p expressly provided that a credibility finding was required to be made

> under those regulations, SSR 16-3p expressly
> provides that use of the term "credibility"
> was being eliminated because the SSA
> regulations did not use it. 81 F.R. at
> 14167. SSR 16-3p further provides: In
> [eliminating reference to "credibility"], we
> clarify that subjective symptom evaluation
> is not an examination of an individual's
> character. Instead, we will more closely
> follow our regulatory language regarding
> symptom evaluation. Id. SSR 16-3p also
> expressly provides that the ALJ may not make
> conclusory statements about having
> considered the symptoms, or merely recite
> the factors described in the regulations.
> Rather, the determination or decision must
> contain specific reasons for the weight
> given to the individual's symptoms, be
> consistent, and supported by the evidence,
> and be clearly articulated so the individual
> and any subsequent reviewer can assess how
> the adjudicator evaluated the individual's
> symptoms. Id. at 14171.

Martsolf v. Colvin, 2017 U.S. Dist. LEXIS 2748, *14-15, 2017 WL
77424, *5 (W.D. Mo. Jan. 9, 2017); see also McVey v.
Commissioner of Soc. Sec., 2016 U.S. Dist. LEXIS 93884, *14,
2016 WL 3901385, *5 (M.D. Fla. July 19, 2016) (holding that ALJ
erred in basing her credibility determination on the fact that
the claimant had made inconsistent statements concerning his
sobriety, a matter which was unrelated to his impairment);
Lindsey, 2016 U.S. Dist. LEXIS 129547 at *13, 2016 WL 5253219 at
*5 ("[i]nconsistencies and conflicts in the record evidence and
the claimant's statements about her symptoms may provide a basis
for discounting the extent of claimant's statements.").

At her administrative hearing, Plaintiff testified that she

can no longer work because she has severe pain in her legs, left knee, back, shoulder, and neck. (Doc. 13 at 221). In support of her argument that the RFC does not account for this pain, Plaintiff points to the following evidence which she alleges establishes that she cannot work and is disabled:

(1) treatment notes from 2008 to 2014 showing diagnoses of lumbar *strain* (with an otherwise normal lumbar spine), cervical spondylosis, degenerative changes in the thoracic spine, degenerative joint disease, chronic pain to the lower lumbar spine with muscle spasms, radiculopathy, neuropathy, lumbago, and reports of pain on range of motion;

(2) treatment notes from 2010 showing diagnoses of cervicalgia (neck pain) and myalgia, as well as complaints in 2012 of tenderness and pain in her right shoulder;

(3) treatment notes from 2009 to 2013 showing diagnoses of chronic bilateral lower leg pain and thrombophlebitis of the lower extremities;[6] and

(4) treatment notes from 2010 to 2014 showing diagnoses of recurrent left knee pain with flexion (with small lobulated meniscal cyst), degenerative joint disease of the left knee, and osteoarthritis with tenderness on palpation and pain on range of

---

[6] The Court notes that the increase in pain reported by Plaintiff in and around January 2014 was related to injuries sustained in a motor vehicle accident that occurred on January 13, 2014. (Doc. 15-2 at 57-99).

motion. (Doc. 17 at 4-7; Doc. 15-2 at 47-99; Doc. 14-2 at 186). According to Plaintiff, the ALJ erred in not accounting for the pain caused by these impairments in the RFC.

To the contrary, the record shows that the ALJ expressly considered these treatment records and found that Plaintiff's claims of disabling pain were not consistent with these records or the remaining substantial evidence and, thus, the ALJ was correct in discounting Plaintiff's claims of disabling pain. (Doc. 13 at 202-03). The ALJ specifically noted Plaintiff's multiple "normal" clinical findings on musculoskeletal examination;[7] a 2012 MRI of Plaintiff's left knee showed a small cyst associated with a probable small tear (Doc. 14-2 at 186); a 2014 MRI of Plaintiff's lumbar spine showed degenerative disc disease at L4-L5 and L-5-S1, with no acute lumbar spine process and no stenosis at any level (Doc. 15-2 at 121); Plaintiff's treatment warranted no more than conservative measures for her pain, including medication, occasional injections, and physical therapy (Doc. 15-2 at 55, 61, 95-98, 110-15);[8] Plaintiff admitted

---

[7] The record confirms that Plaintiff frequently had essentially normal musculoskeletal findings with some tenderness on palpation. (Doc. 15-2 at 50, 55, 78, 83, 94; Doc. 15 at 5, 9).

[8] Plaintiff's medical records confirm that she received only conservative treatment with medications, occasional injections, and physical therapy. Further, on January 15, 2014, Plaintiff's treating physician refused to refill her prescription for Lortab until Plaintiff made an appointment with an orthopedist, which she did not do. (Doc. 15-2 at 69).

that the medications helped (Doc. 13 at 233); while Plaintiff uses a cane, which helps with balance, it was not prescribed by a physician (Doc. 13 at 222, 234-35); although Plaintiff testified that she could only stand/walk for thirty minutes and was unable to raise her right arm, her physical therapy notes showed that she was able to perform therapeutic exercises for thirty to forty-five minutes (Doc. 13 at 202-03, 223-25; Doc. 15-2 at 110, 116); Plaintiff testified that she suffers "severe" pain only about twice a week (Doc. 13 at 246); and Plaintiff reported activities of daily living that include living independently, cooking, cleaning, and shopping. (Doc. 15 at 61). This evidence belies Plaintiff's claims of debilitating pain.

Having reviewed the record at length, the Court concludes that substantial evidence supports the ALJ's determination that, even with Plaintiff's severe impairments of degenerative disc disease of the cervical and lumbar spine, osteoarthritis of the left knee, and obesity, she can still perform a range of light work with the stated restrictions. Moreover, Plaintiff has failed to show that any limitations caused by her physical impairments exceed the RFC and are not accommodated by the restrictions to "occasional stooping and crouching; no upper right extremity overhead reaching or pushing or pulling; no climbing; no left leg pushing or pulling; and no unprotected

heights." (Doc. 13 at 200).

Based on the foregoing, Plaintiff's claim must fail.

**VII.** **Conclusion**

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for supplemental security income be **AFFIRMED.**

**DONE** this **1st** day of **June, 2017.**

                                        /s/ SONJA F. BIVINS
                              UNITED STATES MAGISTRATE JUDGE